# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEONARD WALDEN,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:09-cv-1332-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for social security disability insurance benefits and supplemental security income. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on January 25, 2005, alleging an onset date of March 2, 2004 (R. 95-99, 101-02, 274-76). The applications were denied upon initial review and again on reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 64-67, 270-71, 474-98). By written decision dated February 19, 2008, the ALJ found that Plaintiff was not disabled (R. 280-87). The Appeals Council reviewed and vacated that decision, and remanded the matter for a new hearing (R. 288-291). A second administrative hearing was held on December 18, 2008, before a new ALJ (R. 499-533). By written decision dated January 13, 2009, the ALJ found that Plaintiff retains the capacity to perform a range of light work and is capable of making a successful adjustment

to other jobs that exist in the national economy, and that he is therefore not disabled (R. 21-33). The Appeals Council denied Plaintiff's request for review (R. 9-12), making the ALJ's written decision the final decision of the Commissioner.

Plaintiff timely filed the instant action (Doc. No. 1), and the parties consented to the jurisdiction of the undersigned magistrate judge. The matter has been fully briefed, and is now ready for resolution.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff alleges that he is disabled due to a torn shoulder muscle, diabetes, high blood pressure, cataracts, neuropathy (R. 108), and arthritis in his hip and elbow (R. 508-09).

*Summary of Evidence Before the ALJ*

Plaintiff was 47 years old on the date he filed his applications and 51 years old at the time of the ALJ's decision (R. 95). He is a high school graduate with two years of college and past relevant work experience as a stage technician/stage hand (R. 109, 503-04).

Plaintiff's medical history is set forth in detail in the ALJ's decision and, in the interests of privacy and brevity, will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of treating providers, the record includes the opinions of examining and non-examining state agency physicians and consultants, the forms and reports completed by Plaintiff with respect to this claim, as well as the testimony of Plaintiff at hearing and the testimony of a Vocational Expert. By way of summary, the ALJ found Plaintiff had severe impairments of diabetes mellitus with neuropathy and status post left shoulder injury (R. 23), and the record supports this uncontested finding. The ALJ determined that Plaintiff's impairments did not meet or medically equal one of the impairments listed in the Listing of Impairments (the Listings), 20 C.F.R. pt. 404, subpt. P, app. 1 (2009) (R. 23), and determined that Plaintiff retained the residual functional capacity

("RFC") to perform light work, with no more than occasional postural activities, occasional pushing and pulling, and occasional reaching; with no climbing of ladders, ropes, or scaffolds; no overhead reaching; no repetitive fine or gross manipulations; no exposure to noise or hazards; and the need to be able to function with occasional blurry vision (R. 24). The ALJ found that Plaintiff could not return to his past relevant work but, relying on the testimony of the Vocational Expert, determined that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform (R. 30-31), and he was therefore not disabled.

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff raises several issues, contending that: 1) the ALJ erred in rejecting the opinions of treating and examining physicians; 2) the credibility finding is not supported by substantial evidence; and 3) the expert testimony is inconsistent with the Dictionary of Occupational Titles.

### *Treating and Examining Physicians*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the

treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff objects that the ALJ did not give appropriate weight to the opinions of treating physicians and consultative examiners. The Court treats each, in turn.

*Treating Family Practitioners*

Plaintiff presented to treating family practitioners Quililan and Orizondo in 2003, reporting a history of diabetes mellitus and hypertension (R.183-196). In November of 2004, Plaintiff complained of visual difficulties, was referred to an ophthalmologist (R. 186-7), and underwent cataract surgery in July 2005 (R. 183). On December 8, 2005, he complained of pain and numbness in his feet, and examination revealed tenderness in the right shoulder, which Dr. Quililan assessed as bursitis (R. 184). An MRI of the right shoulder dated December 21, 2005 revealed a "tiny partial tear" of the distal rotator cuff, but remaining shoulder was normal (R. 247). In a letter dated January 25, 2006, Dr. Quililan noted the diagnoses of hypertension, diabetes with neuropathy, cataracts, right shoulder bursitis, and a rotator cuff tear, and stated that since the cataract surgery in July 2005, Plaintiff "has not been able to work." (R. 181).

On January 17, 2007, Plaintiff complained of left hip pain for the preceding week, worse with sitting or standing (R. 335). He was referred for further evaluation. X-rays revealed an unspecified "deformity" in the hip (R. 333), but an MRI dated April 4, 2007 was normal (R. 342). By letter dated January 8, 2008, Dr. Orizondo advised that Plaintiff was being seen and treated for diabetes and hypertension, which "continues to have great effect on his physical endurance," and noted: "It is my

-5-

opinion that he cannot work at this time" (R. 362).  In a letter dated December 15, 2008, Dr. Quililan affirmed that Plaintiff was under his care for diabetic retinopathy, rotator cuff tear of the right shoulder, and osteoarthritis  (R. 456).  He advised that these conditions "continue to effect [sic] his physical endurance" and "due to his current state of health, it is my opinion that [Plaintiff] is not able to work at this time." *Id.*

The ALJ noted these three statements of disability, but accorded them little weight, finding "no basis in the progress notes or explanation" for the "extreme" opinions of Drs. Quililan and Orizondo, which contrasted with other opinions outlined in his decision (R. 28-29).[1]  Plaintiff challenges this finding, contending that the treatment notes contain "positive findings which substantiate the diagnoses," citing to:

> treatment notes and diagnostic testing, which reflect pain and numbness in both feet (Tr. 184, 253, 362, 460); left hip pain (Tr. 335), left hip abnormalities on x-ray films (Tr. 333), cortisone injections to the left hip (Tr. 248), right shoulder pain (Tr. 184, 253, 336-37), a torn right rotator cuff by MRI (Tr. 247), and referral to an ophthalmologist who found evidence of, inter alia, diabetic retinopathy resulting in diminished vision bilaterally (Tr. 186-87, 213-14, 346, 363).

(Brief at pp. 12-13).   While there is evidence to substantiate the *diagnoses,* that is not the issue.  A bare diagnosis says nothing of the ability of a person to work.  *Delker v. Commissioner of Social Sec.,* 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009) ("A mere diagnosis is insufficient to establish that an impairment is severe.").  Moreover, "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue,*  2010 WL 582617, 6 (11th Cir. 2010) (unpublished).  The three letters  at issue here, as pointed out by the Commissioner, are mere conclusions of an inability to work unsupported by anything other than a

---

[1]The ALJ specifically noted that the physical examination findings were normal, except for some tenderness in the shoulder (R. 29).

listing of diagnoses. As such, the letters are due no particular deference. *See Kelly v. Commissioner Of Social Security,* 2010 WL 4121298, 3 (11th Cir., October 21, 2010) (unpublished) ("Given that Dr. Ham-Ying's letter merely listed Kelly's impairments and stated that she was unable to return to work, it arguably offered only a non-medical opinion on a matter reserved for the ALJ. As such, the ALJ was permitted to consider Dr. Ham-Ying's letter, but not to give it any special significance.").

Even assuming the letters were medical opinions, the ALJ still could discount the letters if he found good cause to do so. Here, the ALJ determined that the opinions that Plaintiff was unable to work were inconsistent with the record. If that finding is supported by substantial evidence it is due this Court's deference, despite the existence of other evidence which may support an alternate finding. The Court finds such to be the case here.

Plaintiff contends that the existence of "positive findings," belies the ALJ's conclusion that the actual physical examinations were essentially normal. The Court sees no irreconcilable conflict. The progress notes from the January 10, 2006 visit (two weeks before the first letter) indicate a "normal" check for all of the areas examined, including, among other areas, feet/extremities, musculoskeletal, neuro and general (R. 182). Review of systems was negative, and Plaintiff's blood pressure was 128/92. *Id.* While the partial tear was mentioned, there was no indication of disabling pain or symptomology noted, and no limitations were imposed. Although Plaintiff complained of pain from his hip on January 17, 2007 (R. 335), by January 25, 2007, Plaintiff reported a pain level of "0" (R. 334). Examination notes of January 30, 2007 again indicate "normal" for all areas examined, with a pain level of "0" (R. 333). Even when Plaintiff complained of foot pain at level "6," the examination notes indicated a "normal" exam (R. 460), and no restrictions or limitations were noted (R. 460).

The ALJ's observation that the letters contrast with other medical evidence is also supported. As noted above, an MRI of the hip was normal. Plaintiff's treating ophthalmologist opined that bilateral cataract extractions yielded "excellent results" (R. 206). Plaintiff continued to have issues with "cloudy" vision, resulting in follow up procedures, but obtained eventual uncorrected visual acuity of 20/40 in the right eye and 20/70 in the left eye (R. 363). Plaintiff reported his vision as improved as of November 2008 (R. 401).

Plaintiff underwent a cardiac workup which included a complete physical examination on August 2, 2006, with nothing disabling noted (R. 369-70). A consultative examiner examined Plaintiff and opined that he could stand/walk for six hours a day; sit for eight hours a day; and lift no more than ten pounds with the right upper extremity; and that he should avoid repetitive bending, stooping, and crouching (R. 223). A non-examining state agency physician also opined that Plaintiff was capable of work activity (R. 28, 224-231). This evidence is more than a scintilla and the ALJ's finding that the conclusory opinions of the family practitioners are not entitled to great weight is therefore properly supported.

*Dr. Newsome*

On November 26, 2008, Plaintiff presented to family practitioner William Newsome for a consultative examination (R. 400-04). Dr. Newsome found blood pressure at 160/96; constricted pupils; 20/50 vision bilaterally; decreased ranges of motion in both shoulders; tenderness at the right elbow; and an antalgic gait (R. 401-03). Motor strength was 5/5, grip was 5/5, and fine manipulation was normal. Muscle strength in hips, knees, ankles and toes was 5/5 with normal range of motion. *Id.* Right shoulder x-rays were normal (R. 403). Diagnoses included hypertension, diabetes, bilateral rotator cuff tears, neuropathy, arthritis, and status post bilateral lens implants (R. 403-04). In a Medical Source Statement of the same date, Dr. Newsome estimated that Plaintiff could lift and

carry up to ten pounds continuously and up to 20 pounds frequently; that he could sit for eight hours without interruption; stand for one hour at a time for a total of two hours a day; and walk for one hour at a time for up to three hours a day due to pain in both feet secondary to neuropathy, and pain and tenderness in the shoulders due to a history of a rotator cuff tear (R. 406-07). His rotator cuff tear would also result in a total preclusion of overhead reaching, only occasional reaching in all other directions, frequent handling or fingering, occasional pushing and pulling, and continuous feeling with each hand (R. 408). Dr. Newsome opined that Plaintiff was able to shop, travel, ambulate without an assistive device, use standard public transportation, prepare simple meals, take care of his personal hygiene and sort and handle paper files (R. 411).

In his decision, the ALJ noted Dr. Newsome's finding that Plaintiff could stand and walk only two to three hours in an eight hour workday, but the ALJ did "not find objective medical evidence to establish such limitations" (R. 29). Plaintiff challenges the ALJ's rejection of this finding, contending: "The ALJ's suggestion that bilateral foot pain does not reasonably limit the ability to stand and walk but only to push and pull is not only at odds with the medical opinions of record but is logically absurd." (Brief at p. 13).

As indicated in the RFC, the ALJ adopted much of the consultant's findings, rejecting the limitation on standing as unsupported. The ALJ noted that there is no other finding of abnormal gait in the medical record (R. 29), and this finding is supported by substantial evidence (R. 222, 431- specifically noting normal gait). Other examiners found a much greater capacity for standing, and Dr. Newsome's own examination notes reveal that Plaintiff walked without assistance, including squat and heel to toe walking, and had 5/5 motor strength in his ankles and toes (R. 403). Dr. Newsome found that Plaintiff could shop and travel, and Plaintiff stated that he mows the lawn (R.

122) – all activities that require a certain ability to stand. The ALJ's determination that the limitation on standing in Dr. Newsome's report is an aberration not worthy of crediting is supported.

*Dr. Kilgus*

Plaintiff next argues the ALJ erred in rejecting portions of the May 2006 opinion from Dr. Kilgus, an orthopedic surgeon who treated Plaintiff's right shoulder between February 2006 and May 2006. In his impairment questionnaire, Dr. Kilgus concluded that Plaintiff could sit, stand, and walk for five hours in an eight-hour day; could lift and carry up to 20 pounds occasionally; had no limitations with repetitive reaching, handling, fingering, or lifting; could never reach overhead or grasp, turn, or twist objects with his right upper extremity; and had no limitations with fine manipulation (R. 414-17). However, Dr. Kilgus also opined that Plaintiff's pain and other symptoms "frequently" interfered with his attention and concentration and that he would likely be absent from work more than three times a month (R. 418). The ALJ did not credit these particular limitations, noting that "there is nothing in the record of the claimant complaining to him or any other physician of concentration deficits" and concluding that "the medical evidence does not show that the claimant goes to see his treating doctors three times a month or the hospital due to his pain" (R. 29).[2] Plaintiff challenges this rationale.

Plaintiff does not point to any place in the record where Plaintiff complained of difficulties concentrating, but instead contends that the pain Plaintiff experiences "would frequently interfere with his ability to maintain attention and concentration" and thus, no such complaints are needed "in order to believe that his pain truly manifests in this fashion" (Brief at 14). The soft spot in this argument, of course, is that Plaintiff himself never claimed that his pain manifests in this fashion.

---

[2]Further, the ALJ noted that he "also finds that this allegation is not supported by the record" (R. 29).

In other words, while the Court readily accepts that pain *could* cause attention difficulties, there is no evidence in this case that, in fact, it *did*. It appears that Dr. Kilgus merely assumed that it would; an assumption the ALJ was entitled to discredit, absent any evidence supporting it.[3]

Moreover, the Court finds adequate support for the ALJ's rejection of the opinion that Plaintiff would be absent from work more than three times a month. As pointed out by the Commissioner, the evaluation was directed solely to Plaintiff's shoulder pain, which was characterized as moderate (R. 413-14), and the assessment was provided *prior to* Plaintiff's shoulder surgery (R. 417, 431). The surgery itself was reportedly successful and "without any issues" (R. 372). While the Court agrees that the fact that a claimant does not report to the physician or hospital three times a month does not mean that he or she would not miss work that frequently, the ALJ also concluded that the allegation of frequent absenteeism had no record support (R. 29). As this rationale is adequately supported,[4] the Court sees no reversible error.

*Dr. Perdomo*

On May 5, 2006, Plaintiff presented to family practitioner Alex Perdomo for a consultative exam (R. 222-23). Dr. Perdomo opined that Plaintiff could stand/walk for six hours a day; sit for eight hours a day; and lift no more than ten pounds with the right upper extremity; and that he should avoid repetitive bending, stooping, and crouching (R. 223). The ALJ adopted this opinion in large measure, with the exception that the ALJ determined that Plaintiff could occasionally lift 20 pounds, citing to Dr. Kilgus' assessment as support (R. 29). Plaintiff contends that this "picking and choosing amongst the various findings in the record smacks of" arbitrariness (Brief at 14). Making a

---

[3] No treating or consulting physician noted any deficits in Plaintiff's ability to concentrate. Moreover, Plaintiff's description of his activities do not reflect an inability to concentrate. For example, Plaintiff testified that he drove an hour to attend the hearing (R. 505) and he reads, watches TV, visits on the phone with family, and works on a computer (R. 487-88).

[4] Indeed, Plaintiff fails to cite a single record reference to support Dr. Kilgus' restrictive finding.

determination amongst conflicting evidence is the very definition of adjudication and, as long as the conclusions are amply supported, there is nothing arbitrary about it. Here, the ALJ credited the treating physician's opinion (Dr. Kilgrus) with respect to a matter within his particular expertise (orthopedics) over the opinion of a one time consultative examiner. This is consistent with established standards as a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). No error is shown.

### *Credibility*

Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but found the allegations concerning the intensity, persistence and limited effects of those symptoms to be not credible to the extent they were inconsistent with the RFC (R. 28). The ALJ noted that the medical evidence and other reports showed that Plaintiff was capable of at least light exertion (R. 28), and cited to Plaintiff's reports that he is able to take care of his personal needs, drive and go grocery shopping, and mow the grass with small breaks. The ALJ acknowledged Plaintiff's reports of shoulder pain, but noted that his medication helped and there were no reported

side effects of the medication (R. 28). Plaintiff challenges this determination as inaccurate in that the ALJ omitted mention of additional factors which qualify the frequency or intensity of any given activity.

The record supports that Plaintiff shops, drives (including driving for an hour to the hearing), and "mows the grass with small breaks," as noted by the ALJ (R. 122, 504-505, 517). As the ALJ also found that the medical evidence supports light exertion, and that finding is supported by substantial evidence, the ALJ has articulated sufficient properly supported reasons to sustain the credibility finding.

### *The finding at Step 5*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Applied here, the ALJ determined at step four that Plaintiff could not perform his past relevant work, and the burden shifted

to the Commissioner. Relying on the testimony of a Vocational Expert (R. 527-529), the ALJ found that Plaintiff could perform other work in the national economy and was therefore not disabled.

In response to a hypothetical posed at hearing, which assumed the Plaintiff's RFC and age, education and work experience, the Vocational Expert identified the unskilled jobs of surveillance systems monitor; usher; and a page/tour guide, as jobs that such a hypothetical person could perform (R. 528-29). The Vocational Expert expressly denied the existence of any conflicts between his testimony regarding the requirements of those jobs and the descriptions of those jobs contained in the Dictionary of Occupational Titles ("DOT") (R. 530). Plaintiff asserts that reversible error is present in that the Vocational Expert's testimony is "grossly inconsistent" with the DOT.

As set forth in the Commissioner's brief, it is not at all clear that the testimony of the VE is, in fact, inconsistent with the DOT. Whether it is or isn't, however, is of no moment here. The VE was questioned about the basis for his opinions and opined that even with blurry vision, the occupations identified could be performed by the hypothetical individual (R. 528-531). In this circuit, the testimony of a VE "trumps" the descriptions in the DOT. *See Jones v. Apfel,* 190 F. 3d 1224 (11th Cir. 1999); *Peeler v. Astrue,* 2010 WL 4033988, 3 (11th Cir., Oct. 15, 2010) (unpublished) ("The ALJ did not err in relying on Dr. Feldman's testimony even if it conflicted with information in the DOT because under our precedent Dr. Feldman's testimony trumps the DOT."). The ALJ did not commit legal error in relying on the VE's testimony and the testimony constitutes sufficient evidence to support the finding at step five that Plaintiff was not disabled.

A final word is in order. The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. While it is clear that Plaintiff has challenges and difficulties, the only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it must affirm the decision.

### *CONCLUSION*

The decision of the Commissioner was supported by substantial evidence and was made in accordance with proper legal standards. As such, it is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on November 22, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record